IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY V. BALDWIN,

      Plaintiff,                       No. CIV S-09-0711 WBS GGH P

  vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS
AND REHABILITATION, et al.,               ORDER &

      Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. By Order (docket # 9), filed on 5/18/09, plaintiff's pro se complaint, filed on 3/16/09, was found appropriate for service as to the following five defendants for a violation of his rights under the Eighth Amendment: Officers J. Fannon and M. Gray; Sergeant R. Barton; the Deputy Warden[1] and Acting Warden of High Desert State Prison.[2] Pending before the court is plaintiff's 5/13/09, "motion for emergency injunctive relief," seeking a prison transfer, which the court construed as a motion for a temporary restraining order (TRO) and which the undersigned ordered served upon the Office of the Attorney General, on 5/18/09 (docket # 12), along with a copy of the original complaint. A response was provided by the Office of the Attorney General

---

[1] Although plaintiff did not name the individuals who are employed as Deputy Warden and Acting Warden, the court has been informed that the Warden of High Desert State Prison is Michael McDonald and the Deputy Warden is R.A. Gower.

[2] The Findings and Recommendations, also filed on 5/18/09, recommending dismissal with prejudice of defendant CDCR, are pending.

as a special appearance, expressly without waiving service upon defendants, was filed timely on 6/02/09.  Docket # 17.  Following a careful review, the court recommends denial of the motion.

Legal Standard for Injunctive Relief

### TRO

The purpose in issuing a temporary restraining order is to preserve the status quo pending a fuller hearing.  The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to the hearing on a preliminary injunction.  It is apparent, however, that requests for temporary restraining orders which are not ex parte and without notice are governed by the same general standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

### Preliminary Injunction Standard

The legal principles applicable to a request for injunctive relief are well established.  To prevail, the moving party must show either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor.  See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985).  The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown.  Oakland Tribune, 762 F.2d at 1376.  "Under any formulation of the test, plaintiff must demonstrate that there exists a significant threat of irreparable injury."  Id.  In the absence of a significant showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits.  Id.

In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

<u>Plaintiff's Underlying Allegations</u>

The gravamen of plaintiff's complaint is that he was subjected to excessive force by defendants Fannon and Gray at High Desert State Prison (HDSP) on 2/29/08, despite having been ordered by a physician to be put on single cell status, pending the outcome of neck surgery, and despite having been cautioned by a Mercy Hospital physician (Dr. Rahimifar) that if he were hit in the head one time, he would never walk again. Complaint, pp. 3-4.

Plaintiff claims that defendant Fannon told plaintiff on 2/29/08 that he would be moved to the gym, but plaintiff told Fannon that, due to his severe neck injury, he would go to administrative segregation (ad seg or ASU) instead. Plaintiff was then taken in waist restraints to the program office where defendant Barton told plaintiff that he did not "give a s- - t" about plaintiff's neck injury and that HDSP made its own rules. Id.

When plaintiff, still in waist restraints, saw that he was then being taken to the gym, he stopped walking; thereafter, defendants Fannon and Gray forced plaintiff into the gym, smashing his head into a door, after which he was taken to Lassen Medical Facility where a doctor told him he had suffered a severe cervical strain. (Plaintiff notes that he has a pending § 1983 action in the Ninth Circuit with respect to the accident that caused the original C-2 fracture at Lancaster State Prison in 2005). Id., at 4

Plaintiff was told by the deputy warden that he does not care that plaintiff was "fil[]ing charges against the officers," and that he should do as he was told and he would not get hurt. Plaintiff states that he fears for his life and safety and is fearful of retaliation. Plaintiff asks for money damages from each defendant (including the warden for "let[t]ing this happen"). Plaintiff also asks for injunctive relief in the form of an emergency transfer. (Plaintiff also asks

that lost time credits be restored). Id., at 3-4.

Among the exhibits plaintiff attaches to his complaint are a copy of an HDSP inmate appeal he filed through to the third level denial, regarding his request for a transfer and appealing the incident giving rise to the instant cause of action (Complaint, pp. 17- 32); a copy of classification chrono, showing plaintiff had a classification score of 41 as of 12/26/07, and noting that he was unassigned at that time due to medical concerns (Complaint, p. 33); a copy of letter directed to a an Internal Affairs special agent in Rancho Cucamonga, complaining of the alleged actions by defendants Fannon and Gray herein (Complaint, pp. 35-36); a copy of a Disability Placement Program form, dated 6/12/08, showing plaintiff is an intermittent wheelchair user, restricted to a lower bunk and no stairs (Complaint, p. 37), and copy of 2/29/08 rules violation report which eventually resulted in plaintiff's being found guilty of attempted battery on a peace officer (defendant Fannon, herein) in the apparent incident giving rise to this cause of action in an April, 2008, disciplinary hearing, for which plaintiff was assessed a 150-day credit loss as well as a SHU (security housing unit) term.  Complaint, pp. 40 - 76.

Plaintiff's Motion

In his motion/declaration for preliminary injunctive relief, plaintiff asks the court for an emergency transfer because, on 4/27/09, as defendant Fannon escorted plaintiff to the B-yard medical department for plaintiff's diabetes shot, Fannon made certain provocative remarks to plaintiff, including: "[t]he last time Mr. Baldwin and I [met], I left a lasting impression on him." Plaintiff asserts that the referenced occasion occurred on 2/29/08, when Fannon smashed him into the wall which resulted in plaintiff's being put in a wheelchair.  Plaintiff claims that he is so fearful that he only comes out of his cell when he needs to, and he believes that he is being set up at HDSP. Motion, p. 1.

Plaintiff asks to be transferred to an S.N.Y (sensitive needs yard), Level III facility. Although he notes that his current placement scale is at 53, he claims that he could obtain a placement score of 50 at any time, and that when he was transferred to HDSP, his

placement score was 41. Plaintiff cites CAL. CODE REGS. tit.xv, § 3375.1(A)(3), which states that "[a]n inmate with a placement score of 28 through 51 shall be placed in a Level III facility." Id., at 2.

Opposition

In response to the court's order and on behalf of the as-yet-unserved defendants, Supervising Deputy Attorney General (DAG) Monica Anderson represents that HDSP was contacted to determine whether plaintiff was at risk or had been threatened. Opposition (Opp.), p. 2. Exh. F to the Opp. is a copy of plaintiff's inmate appeal seeking a transfer to a Level III facility in February of 2008 (plaintiff also includes a copy of this appeal with his complaint). The DAG states that plaintiff was told during the appeal process that he would be moving to the gym, but that plaintiff was placed in the administrative segregation unit (ASU). Opp., p. 2. Plaintiff grieved the treatment he received from defendants Fannon and Gray on 2/29/08 (the same appeal attached by plaintiff to his complaint). The DAG provides evidence of plaintiff's having been placed in the ASU on 2/29/08, after he refused to move to the gym and after allegedly attempting to assault staff. Exh. A to Opp. (128 G classification chrono). Exh. B to the Opp. is a copy of the Rules Violation Report dated 2/29/08, (also submitted by plaintiff with his complaint). Exh. C is a copy of a 4/24/08 classification chrono showing plaintiff was placed in the ASU on 2/29/08 and that a six-month SHU term was imposed as a result of the 2/29/08 RVR. Exh. D to the Opp. shows that plaintiff was seen by a classification committee, on 7/10/08, which recommended plaintiff be housed at HDSP Level IV SNY and noted that plaintiff's classification score had been raised placing him at Level IV due to the disciplinary action. The DAG indicates that as of 7/15/08, plaintiff has been released to the same yard to which defendant Fannon is assigned. Opp., p. 3.

The DAG indicates that, according to a Captain Davey (not a defendant), plaintiff has not approached any staff with safety concerns and that the captain assigned Correctional Lieutenant R. Gamberg (also not a defendant) to interview plaintiff. Opp., p. 3. Exh. G to the

Opp. is a declaration by Lt. Gamberg, assigned to the Facility B Level IV SNY at HDSP. Lt. Gamberg declares that he conducted a confidential interview with plaintiff at the instruction of his captain with regard to plaintiff's alleged safety concerns. Lt. Gamberg states that plaintiff told him he did not have any issues with inmates on the Facility B yard. On further questioning, plaintiff told Gamberg that he has a pending lawsuit against defendants Fannon and Gray, but that everything is "'ok.'" When plaintiff was asked whether any B facility staff had treated him in an unprofessional manner, assaulted or harmed him, he said, according to Gamberg, "that no, he does not really talk to them and that he just goes to and from chow." When asked if any staff had threatened or treated him unprofessionally, he replied in the negative as well, according to Lt. Gamberg.

<u>Eighth Amendment Excessive Force Legal Standard</u>

"[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7,112 S. Ct. 995, 999 (1992), citing <u>Whitley v. Albers</u>, 475 U.S. 312, 106 S.Ct. 1078 (1986). When determining whether the force was excessive, we look to the "extent of the injury..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" <u>Hudson</u>, <u>supra</u>, at 7, 112 S. Ct. at 999.

While de minimis uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." <u>Hudson</u>, <u>supra</u>, at 9, 112 S. Ct. at 1000, citing <u>Whitley</u>, at 327, 106 S.Ct., at 1088.

\\\\\

Discussion

Although it is not entirely clear, it appears that plaintiff may be fearful of the defendants' actions, at least in part, as a result of filing a lawsuit against them. The court is mindful that verbal harassment alone is insufficient to state a claim of retaliation, see Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987), and even threats of bodily injury are insufficient, because a mere naked threat is not the equivalent of doing the act itself, see Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). It is possible, in this instance, that defendant Fannon's alleged remarks carried with it for plaintiff the sting of what he alleges in his complaint transpired earlier, i.e., that it is the claimed actions of defendants Fannon and Gray which he alleges resulted in injury serious enough for plaintiff to require a wheelchair.

On this showing, however, where plaintiff evidently did not provide any subsequent information to Lt. Gamberg to support his claim of being fearful of defendant Fannon, or any other prison staff, when given the opportunity, undermines the sense of the immediacy of the threat he states that he feels. It is possible that plaintiff did not feel free to express his concerns, whether legitimate or simply anxiety-driven, to this prison official, despite the apparent confidentiality of the interview; however, the court cannot base its ruling simply on a mere possibility or speculation. While plaintiff may have felt intimidated by the words that defendant Fannon allegedly used with reference to the last occasion when the two had met, the same words could reasonably be interpreted as disrespectful, scoffing or contemptuous, and, while arguably highly insensitive and inappropriate, in such a light, they do not appear on the face of it to be sufficiently menacing, without more then this single interaction and exchange, to warrant any form of an injunction from this court at this time. That is, plaintiff simply has not, under the circumstances, made a sufficient showing that he is under "a significant threat of irreparable injury." Oakland Tribune, 762 F.2d at 1376. Therefore, the court must recommend denial of the present motion.

\\\\\

1  Accordingly, IT IS ORDERED that the Clerk of the Court, in addition to serving
2  plaintiff by U.S. mail, is to serve the instant Order and Findings and Recommendations
3  electronically upon Monica N. Anderson, Supervising Deputy Attorney General.
4  IT IS RECOMMENDED that plaintiff's motion for emergency injunctive relief,
5  filed on 5/13/09 (docket # 8), seeking to be transferred to another prison facility, be DENIED.
6  These findings and recommendations are submitted to the United States District
7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
8  days after being served with these findings and recommendations, plaintiff may file written
9  objections with the court.  Such a document should be captioned "Objections to Magistrate
10 Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections
11 within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v.</u>
12 <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
13 DATED: June 9, 2009                              /s/ Gregory G. Hollows
14                                                  UNITED STATES MAGISTRATE JUDGE

17 GGH:009
   bald0711.ofr